**Volume 1 of 2**

## FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RAMON LEDEZMA-GALICIA,
                    *Petitioner,*

            v.

ERIC H. HOLDER, Jr.,* Attorney
General,
                    *Respondent.*

No. 03-73648

Agency No.
A38-883-099

RAMON LEDEZMA-GALICIA,
                    *Petitioner-Appellant,*

            v.

PHILLIP C. CRAWFORD; ERIC H.
HOLDER, Jr.,* Attorney General;
JANET NAPOLITANO,** Secretary of
Homeland Security,
                    *Respondents-Appellees.*

No. 04-35048

D.C. No.
CV-03-01316-REJ

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Appeal from the United States District Court
for the District of Oregon
Robert E. Jones, District Judge, Presiding

*Eric H. Holder, Jr., is substituted for his predecessor, Michael
Mukasey, as Attorney General of the United States, pursuant to FED. R.
APP. P. 43(c)(2).

**Janet Napolitano is substituted for her predecessor, Michael Chertoff,
as Secretary of Homeland Security, pursuant to FED. R. APP. P. 43(c)(2).

4989

4990                    LEDEZMA-GALICIA v. HOLDER

Argued and Submitted
March 7, 2005—Portland, Oregon

Submission Withdrawn March 9, 2005
Resubmitted March 22, 2010

Filed March 29, 2010

Before: Stephen Reinhardt, Marsha S. Berzon, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Berzon;
Dissent by Judge Bybee

## COUNSEL

Stephen W. Manning and Jessica M. Boell, Immigrant Law
Group LLP, Portland, Oregon, for the petitioner/petitioner-
appellant.

Peter D. Keisler, Assistant Attorney General, Civil Division,
and David V. Bernal, Assistant Director, Ernesto H. Molina,
Jr., Senior Litigation Counsel, and Leslie McKay, Office of
Immigration Litigation, Civil Division, U.S. Department of
Justice, Washington, D.C., for the respondent/respondent-
appellee.

## OPINION

BERZON, Circuit Judge:

   Ramon Ledezma-Galicia, a lawful permanent resident
alien, was convicted in an Oregon state court in September

1988 of sodomy, for sexually molesting a minor. Current law provides that "sexual abuse of a minor" is an "aggravated felony" as defined by 8 U.S.C. § 1101(a)(43)(A), and therefore grounds for removal under 8 U.S.C. § 1227(a)(2)(A)(iii).[1] Ledezma-Galicia does not dispute that his crime is an aggravated felony. Instead, the question before us is whether Ledezma-Galicia may now be removed from the country based on his 1988 conviction, even though he would not have been deportable for that crime — or for any aggravated felony — at the time of his conviction. We conclude that he may not be removed, because (1) the 1988 law that made aliens deportable for aggravated felony convictions did not apply to convictions prior to November 18, 1988; and (2) neither Congress's overhaul of the grounds for deportation in 1990 nor its rewrite of the definition of aggravated felony in 1996 erased that temporal limitation.

## I.   BACKGROUND

### A.   Overview

Ledezma-Galicia entered the United States in 1979 and became a lawful permanent resident on February 12, 1985. In June 1987, Ledezma-Galicia molested a ten-year-old girl. He was subsequently charged with sodomy in the first degree, in violation of Or. Rev. Stat. § 163.405, and rape in the first degree, in violation of Or. Rev. Stat. § 163.375. In exchange for dismissal of the rape charge, Ledezma-Galicia pleaded guilty to the sodomy count and admitted in his guilty plea that he had sexual intercourse with a minor. On September 16, 1988, he was sentenced to eight months in custody.

In April of 2003, the Bureau of Immigration and Customs Enforcement charged Ledezma-Galicia with removability because of his 1988 conviction. *See Ledezma-Galicia v.*

---

[1]Unless otherwise stated, all references to the United States Code are to the 2000 edition.

Case 3:03-cv-01316-JO Document 20 Filed 03/29/10 Page 5 of 60
Case: 03-73648    03/29/2010    Page: 5 of 60    ID: 7280889    DktEntry: 44-1

4996                LEDEZMA-GALICIA v. HOLDER

*Crawford*, 294 F. Supp. 2d 1191, 1193 (D. Or. 2003) (summarizing the factual background). Under current law, sexual abuse of a minor is an aggravated felony, 8 U.S.C. § 1101(a)(43)(A), and a conviction for an aggravated felony renders an alien removable,[2] 8 U.S.C. § 1227(a)(2)(A)(iii). But that was not the case when Ledezma-Galicia was convicted. *See* 8 U.S.C. § 1251(a) (1982) (listing grounds for deportation). To determine whether Ledezma-Galicia can now be deported because of his 1988 conviction requires a journey through the last twenty years of immigration law reform.

Three laws are relevant to our inquiry, all of which amended the Immigration and Nationality Act ("INA"): the Anti-Drug Abuse Act of 1988 ("ADAA" or "1988 Act"), Pub. L. No. 100-690, 102 Stat. 4181; the Immigration Act of 1990 ("IMMAct" or "1990 Act"), Pub. L. No. 101-649, 104 Stat. 4978; and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA" or "1996 Act"), Pub. L. No. 104-208, div. C, 110 Stat. 3009-546. Because Ledezma-Galicia's conviction occurred before all three enactments, the retroactivity of the currently applicable aggravated felony removal ground, 8 U.S.C. § 1227(a)(2)(A)(iii),[3] to pre-ADAA convictions is central to our inquiry. That inquiry focuses, in turn, on the interplay between the current aggravated felony removal provision, a temporal limitation in the 1988 ADAA, a savings clause in the 1990 IMMAct, and an effective date provision in the 1996 IIRIRA.

---

[2]The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) "eliminated the distinction between deportation and exclusion proceedings, replacing them with a new, consolidated category — 'removal.' " *Salgado-Diaz v. Ashcroft*, 395 F.3d 1158, 1162 (9th Cir. 2005). Because we are here concerned with both pre-IIRIRA and post-IIRIRA law, and because there is no material difference here relevant, we use the terms interchangeably.

[3]Section 1227(a)(2)(A)(iii) provides: "Any alien who is convicted of an aggravated felony at any time after admission is deportable."

Ledezma-Galicia argues that the ADAA, which limited aggravated felony deportations to post-ADAA convictions, protects him from being deported based on his pre-ADAA conviction. The Attorney General maintains, in contrast, that the ADAA is not relevant to Ledezma-Galicia's circumstances, because its temporal limitation on the aggravated felony ground of deportation did not survive the later passage of the IMMAct in 1990 and of IIRIRA in 1996. Applying the heavy presumption against repeals by implication, *see Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 662-64 (2007); *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153-54 (1976), we agree with Ledezma-Galicia that the ADAA's temporal limitation remains in effect as an exception to other temporal provisions enacted later, and precludes his deportation.

## B.   The ADAA of 1988

The ADAA of 1988 made a series of amendments to the INA. In it, Congress, for the first time, both created the category of crimes denominated "aggravated felonies," ADAA § 7342, 102 Stat. at 4469-70, and provided that any alien who was convicted of an "aggravated felony" at any time after entering the United States was subject to deportation. *Id.* at § 7344(a), 102 Stat. at 4470-71 (adding aggravated felony convictions to the statutory list of grounds for deportation);[4] *see also Leocal v. Ashcroft*, 543 U.S. 1, 4 n.1 (2004) (tracing the origins of the term "aggravated felony").

At the time it was enacted in 1988, the ADAA did not make Ledezma-Galicia deportable, for two reasons: First, the ADAA defined only murder, illegal drug trafficking, and firearm and destructive device trafficking offenses — not sexual

---

[4]ADAA § 7344(a) provided in full: "Section 241(a)(4) [of the Immigration and Nationality Act] (8 U.S.C. 1251(a)(4)) is amended — (2) [sic] by inserting after the semicolon the following: 'or (B) is convicted of an aggravated felony at any time after entry;'."

abuse of a minor — as aggravated felonies. *See* ADAA § 7342.**⁵**
Second, the ADAA was enacted on November 18, 1988, just
over two months *after* Ledezma-Galicia was convicted of the
underlying sodomy offense at issue here. A temporal limita-
tion in the ADAA expressly constrained the applicability of
the new aggravated felony removal ground, providing:

> The amendments made by [§ 7344(a) to INA
> § 241(a)(4)] shall apply to any alien who has been
> convicted, on or after the date of the enactment of
> this Act, of an aggravated felony.

ADAA § 7344(b), 102 Stat. at 4471.

So, at the time of Ledezma-Galicia's conviction for sexu-
ally molesting a minor, there was as yet no provision in the
INA making aliens removable as a result of aggravated felony
convictions. And when Congress, just over two months later,
enacted the ADAA, created the category of "aggravated felo-
nies," and made conviction of an aggravated felony a ground
for deportation, that ground for deportation (a) was expressly
made inapplicable to individuals who, like Ledezma-Galicia,
were convicted before the ADAA's enactment, and (b) did not
cover sexual abuse crimes such as Ledezma-Galicia's.

## C.  The IMMAct of 1990

Two years after it enacted the ADAA, Congress overhauled
deportation law by passing the IMMAct. Like the ADAA, the
IMMAct alone did not change Ledezma-Galicia's immigra-
tion status, because it did not define Ledezma-Galicia's crime,

---

**⁵**ADAA § 7342 provided in full: "Section 101(a) [of the INA] (8 U.S.C.
1101(a)) is amended by adding at the end thereof the following new para-
graph: '(43) The term 'aggravated felony' means murder, any drug traf-
ficking crime as defined in section 924(c)(2) of title 18, United States
Code, or any illicit trafficking in any firearms or destructive devices as
defined in section 921 of such title, or any attempt or conspiracy to com-
mit any such act, committed within the United States.' "

LEDEZMA-GALICIA v. HOLDER                    4999

sexual abuse of a minor, as a deportable offense. The Attorney General maintains, however, that § 602 of the IMMAct did affect the temporal reach of ADAA § 7344(a), which had created the aggravated felony ground of deportation.

IMMAct § 602(a) replaced the INA's list of grounds for deportation with a revised list. As recited in the text of IMMAct § 602(a) and codified at 8 U.S.C. § 1251(a), that revised list reiterated the aggravated felony ground and many of the other pre-IMMAct grounds for deportation, only redesignating them at new locations in the U.S. Code. IMMAct § 602(a) also altered or deleted certain other grounds of deportation, and added several new ones. *See* 104 Stat. at 5077-81; *compare* 8 U.S.C. § 1251(a) (1988) *with* 8 U.S.C. § 1251(a) (1988 Supp. II).

In addition, subject to certain exceptions, IMMAct §§ 602(c) and (d) stated that the revised list of grounds for deportation applied to all aliens regardless of their date of entry into the United States or the date of the "facts" that rendered them deportable. Specifically, § 602(c), titled a "Savings Provision," provided that:

> Notwithstanding the amendments made by this section, any alien who was deportable because of a conviction (before the date of the enactment of this Act) of an offense referred to in paragraph (15), (16), (17), or (18) of section 241(a) of the Immigration and Nationality Act,[6] as in effect before the date of the enactment of this Act, shall be considered to remain so deportable. Except as otherwise specifically provided in such section and subsection (d), the provisions of such section, as amended by this section, shall apply to all aliens described in subsection (a) thereof notwithstanding that (1) any such alien

---

[6]INA § 241 at the time was codified at 8 U.S.C. § 1251. *See* 8 U.S.C. § 1251 (1994) (codification notes).

entered the United States before the date of enact-
ment of this Act, or (2) the facts, by reason of which
an alien is described in such subsection, occurred
before the date of the enactment of this Act.

104 Stat. at 5081-82. IMMAct § 602(d), in turn, provided that
"[t]he amendments made by this section, and by section
603(b) of this Act, shall not apply to deportation proceedings
for which notice has been provided to the alien before March
1, 1991." 104 Stat. at 5082.

In short, the IMMAct did not make Ledezma-Galicia
removable, because it still did not classify the sexual abuse of
a minor as an aggravated felony for which one could be
removed. Nevertheless, both parties regard IMMAct § 602 as
central to whether the aggravated felony ground of deporta-
tion applies to Ledezma-Galicia. We will return to discuss
that section below, but first we recount one final enactment
amending the INA and affecting Ledezma-Galicia's case.

## D.   IIRIRA of 1996

In 1996, six years after enacting the IMMAct, Congress
passed the final piece of this statutory puzzle, IIRIRA.
IIRIRA made Ledezma-Galicia's crime a deportable offense
by adding "sexual abuse of a minor" to the definition of
aggravated felony. 8 U.S.C. § 1101(a)(43)(A); IIRIRA
§ 321(a)(1), 110 Stat. at 3009-627. IIRIRA's amendment to
the INA's definition of "aggravated felony" finally brought
Ledezma-Galicia's crime within that definition. The amend-
ment specified that this characterization applied "regardless of
whether the conviction was entered before, on, or after [Sep-
tember 30, 1996]," IIRIRA § 321(b), and to "actions taken
on or after the date of the enactment of this Act, regardless of
when the conviction occurred," *id.* at § 321(c). *See* 110 Stat.
at 3009-628.

Thus, IIRIRA now classifies Ledezma-Galicia's crime as
an aggravated felony. But that classification alone does not

render him removable. Rather, Ledezma-Galicia is only
removable under IIRIRA if, as the government urges, § 602
of the IMMAct repealed the section of the AADA specifying
that an aggravated felony conviction entered prior to November 18, 1998, cannot serve as the basis for a charge of removability. Whether that is so is the central question in this case.

## E.  Procedural history of this case

On April 13, 2003, the Bureau of Customs and Immigration
Enforcement, relying on IIRIRA's revised definition of aggravated felony, initiated removal proceedings against Ledezma-Galicia by filing a Notice to Appear. The Notice charged
Ledezma-Galicia with removability pursuant to 8 U.S.C.
§ 1227(a)(2)(A)(iii) as an alien convicted of an "aggravated
felony," *id.* — specifically, "sexual abuse of a minor," which
is now an aggravated felony under 8 U.S.C. § 1101(a)(43)(A).[7]

An immigration judge ("IJ") determined that Ledezma-Galicia was removable as charged and denied on the merits his
application for discretionary relief under former § 212(c)
of the INA, 8 U.S.C. § 1182(c) (1994).[8] In turn, the Board of
Immigration Appeals (BIA) dismissed Ledezma-Galicia's
appeal from the IJ's decision, affirming both that he was
removable and that he did not merit discretionary relief under
former § 212(c).

Six days later, Ledezma-Galicia filed a petition for a writ
of habeas corpus in the U.S. District Court for the District of
Oregon. While that petition was pending, Ledezma-Galicia
filed a timely petition for review with this court. The district

---

[7]IIRIRA moved the grounds for deportation from INA § 241(a), codified at 8 U.S.C. § 1251(a), to INA § 237(a), codified at 8 U.S.C.
§ 1227(a).

[8]The IJ assumed that Ledezma-Galicia was eligible for former § 212(c)
relief pursuant to *INS v. St. Cyr*, 533 U.S. 289 (2001), but exercised his
discretionary authority to deny such relief.

court denied the habeas petition in a published decision, from which Ledezma-Galicia timely appeals. We treat Ledezma-Galicia's appeal of the district court's denial of his habeas petition as a timely filed petition for review, *Alvarez-Barajas v. Gonzales*, 418 F.3d 1050, 1052-53 (9th Cir. 2005), and consider it together with Ledezma-Galicia's other petition, as the legal issues presented in the two petitions are identical.

## II.  JURISDICTION

The question we address — whether Ledezma-Galicia (or any other alien) is removable for an aggravated felony conviction that occurred before November 18, 1988 — is purely one of law. We therefore have jurisdiction to review it under 8 U.S.C. § 1252(a)(2)(D), as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, div. B, § 106(a), 119 Stat. 231, 310-11.

## III.  DISCUSSION

**[1]** Pursuant to IIRIRA, aliens convicted after the enactment of the ADAA of crimes designated as aggravated felonies are deportable, regardless of when the crimes of which they were convicted were first defined as aggravated felonies. *See Aragon-Ayon v. INS*, 206 F.3d 847 (9th Cir. 2000). Ledezma-Galicia, however, was convicted before the ADAA was enacted, and thus *both* before his crime was defined as an aggravated felony *and* before the introduction of the "aggravated felony" category as a ground for deportation. To resolve Ledezma-Galicia's argument that the ADAA's temporal limitation on applicability prohibits removal for his pre-ADAA conviction, we address in turn the two questions raised by the parties: *First*, did § 602 of the 1990 IMMAct preserve or override ADAA § 7344(b), the ADAA's temporal limitation on aggravated felony deportations? *Second*, if ADAA § 7344(b) survived the IMMAct, did IIRIRA in 1996 eliminate its temporal limitation?

### A.  IMMAct § 602 and ADAA § 7344(b)

**[2]**  To repeat, ADAA § 7344(b) limited aggravated felony
deportations to convictions obtained on or after November 18,
1988, while IMMAct § 602(c), without mentioning aggra-
vated felonies specifically, provided generally that, with a few
exceptions, grounds for deportation should apply to all aliens,
regardless of the date on which "the facts" triggering deporta-
bility occurred.

**[3]**  Recognizing the surface tension between ADAA
§ 7344(b) and IMMAct § 602(c), Ledezma-Galicia urges us to
conclude, first, that the latter did not expressly repeal the for-
mer, and, second, that the latter provision should not be read
to repeal the former by implication, because doing so would
violate both the presumption against implied repeals and the
presumption against retroactively applied statutes. *See gener-
ally Nat'l Ass'n of Home Builders*, 551 U.S. at 662-64; *Land-
graf v. U.S.I. Film Prods.*, 511 U.S. 244 (1994). The Attorney
General, on the other hand, contends that IMMAct § 602(c)
overrides the very specific directive of ADAA § 7344(b), a
conclusion that the BIA reached in *Matter of Lettman*, 22 I.
& N. Dec. 365 (BIA 1998) (en banc). We agree with
Ledezma-Galicia.

**[4]**  To show why that is so, we explain, first, that the
BIA's interpretation of IMMAct § 602(c) merits no deference
because, when read in light of the applicable principles of
statutory interpretation, that provision is not ambiguous in the
respect the BIA supposed that it was. *See generally United
States v. Mead Corp.*, 533 U.S. 218, 229-30 (2001); *Chevron,
U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-
43 (1984). We next conduct our own analysis of the IMMAct
and conclude that it cannot be read to repeal ADAA § 7344(b)
either expressly or impliedly. Finally, we consider whether
this case is controlled by *United States v. Hovsepian*, 359
F.3d 1144 (9th Cir. 2004) (en banc) and *United States v.
Yacoubian*, 24 F.3d 1 (9th Cir. 1994), two cases addressing

firearms convictions covered by a clause similar to ADAA
§ 7344(b), but conclude that it is not.

### 1.  The BIA and *Chevron* deference

The BIA in *Matter of Lettman* addressed the very question
before us — whether the IMMAct repealed ADAA § 7344(b).
As will appear, the BIA in *Lettman* took a fundamentally
wrong turn in its analysis, and so arrived at an interpretation
at odds with the plain language of the two statutes.

**[5]** *Matter of Lettman* concentrated on the "except" clause
in IMMAct § 602(c): "Except as otherwise specifically pro-
vided in such section and subsection (d) . . . ." The BIA deter-
mined, first, that the clause excepted from the rest of IMMAct
§ 602(c) the portions of INA § 241 that otherwise conflicted
with § 602(c). But § 602(c) was ambiguous, the agency con-
cluded, about which version of INA § 241 the IMMAct provi-
sion referred to in the "except" clause. 22 I. & N. Dec. at 372-
73. Lettman's position was that the "except" clause referred
to the *pre*-IMMAct version of INA § 241 — that is, INA
§ 241 as it stood after the ADAA's passage, before the
IMMAct amended it. *Id.* at 373. The BIA rejected this reading
of the statute and instead adopted the Immigration and Natu-
ralization Service's ("INS") position that the clause referred
to the *post*-IMMAct version of INA § 241. *Id.* at 373-74. Hav-
ing made that determination, the BIA went on to conclude
that § 602(c) of the IMMAct overrode § 7344(b) of the
ADAA, because the *post*-IMMAct version of INA § 241 con-
tained no temporal limitation on the application of the aggra-
vated felony ground for deportation.

As it turns out, however, it does not matter whether
IMMAct § 602(c) should be read to refer to the pre-IMMAct
or the post-IMMAct version of § 241(a). Contrary to *Lett-
man*'s supposition, the answer to that question has no bearing
on whether the ADAA's temporal limitation survived the
IMMAct's passage.

**[6]** The key to the BIA's mistake is this: ADAA § 7344(b) was never part of the text of INA § 241 at all. True, ADAA § 7344*(a)* provided: "Section 241(a)(4) [of the INA] (8 U.S.C. 1251(a)(4)) is amended — (2) by inserting after the semicolon [the aggravated felony ground for deportation]." But the text of ADAA § 7344*(b)*, unlike subsection (a), contained no reference to INA § 241, or to its codified version, 8 U.S.C. § 1251. Instead, § 7344(b) reads only: "The amendments made by subsection (a) [of ADAA § 7344] shall apply to any alien who has been convicted, on or after the date of the enactment of this Act, of an aggravated felony."**9**

**[7]** In other words, ADAA § 7344(b) was never a subsection of INA § 241. Instead, it was always an entirely free-standing temporal limitation provision. As a result, neither the

---

**9**Prior to the IMMAct, ADAA § 7344(b) was listed in the "effective date" notes to 8 U.S.C. § 1251. *See* 8 U.S.C. § 1251 (1988). The appearance of ADAA § 7344(b) in those notes does not support the BIA's analysis. For one thing, the provision also appeared in the effective date notes to the post-IMMAct version of the U.S. Code. *See* 8 U.S.C. § 1251 (1994). Furthermore, the ADAA temporal provision appeared only in the notes to § 1251, not in the text. Although codification decisions are ordinarily not made by Congress, it is of some significance that the codifiers understood that § 7344(b) was not part of the text of the statute. *See generally Questions & Answers*, 78 LAW LIBR. J. 585, 592 (1986) (regarding the codification process for federal laws).

We note that some of the electronic versions of the ADAA show § 7344(b) as containing the bracketed phrase "8 U.S.C. § 1251 note" in the middle of subsection (b)'s text, or at the very beginning. *See* Pub. L. No. 100-690, 102 Stat. 4181, 4373 (Westlaw); Pub. L. No. 100-690, 102 Stat. 4181, 7343 (Lexis). Both those transcriptions are erroneous. It is quite clear, if one looks at the Public Law as published in the Statutes at Large, that the reference to "8 U.S.C. § 1251 note" appears only in the *margin* of ADAA § 7344(b), not in the text. Pub. L. No. 100-690, 102 Stat. 4471. Margin notes are added by the codifiers, not by Congress. *See Questions and Answers*, 78 LAW LIBR. J. at 592. The decision to move the codifiers' marginal note into the text of § 7344(b) was apparently made by the electronic databases' transcribers in producing their unofficial online versions of the U.S. Code. Their erroneous decision to reproduce the marginal note as part of the statute itself is without any legal significance.

"except" clause of IMMAct § 602(c) ("Except as otherwise
specifically provided in such section and subsection (d)
. . . ."), nor the affirmative provision of § 602(c)'s second sen-
tence (". . . the provisions of such section, as amended by this
section, shall apply to all aliens described in subsection (a)
thereof"), can describe the fate of ADAA § 7344(b), because
§ 7344(b) was never *in* "such section," pre- or post-IMMAct.
Thus, whichever version of INA § 241 the "except" clause
and the affirmative language of IMMAct § 602(c) refer to,
*neither* reference to "such section" refers to § 7344(b) or tells
us whether § 7344(b) was alive or dead after the enactment of
the IMMAct. *Lettman* is therefore not entitled to *Chevron* def-
erence, as its reasoning cannot be squared with the actual stat-
ute.[10]

## 2.  Implied repeal

[8] Although the BIA's premises were incorrect, we might
still reach the same conclusion if the IMMAct § 602(c)
*impliedly* repealed the pertinent ADAA provision. If, as here,
the presumption against implied repeal definitively resolves
the critical statutory interpretation question, we do not under
*Chevron* defer to a contrary agency interpretation, because,
once the presumption is applied, the statute is not ambiguous.
*See generally Lujan-Armendariz v. INS*, 222 F.3d 728, 749

---

[10]We note that two of our sister circuits have deferred to the BIA's analy-
sis by relying in part on the same erroneous premise as did the BIA in
*Matter of Lettman*. Neither court recognized that the conviction date trig-
ger of ADAA § 7344(b) was not contained in any version of INA § 241
and so was not referenced in IMMAct § 602(c). *See Lettman v. Reno*, 207
F.3d 1368, 1370-72 (11th Cir. 2000); *Lewis v. INS*, 194 F.3d 539, 545-46
(4th Cir. 1999).

The only other court to address this issue is the Second Circuit. In *Bell
v. Reno*, 218 F.3d 86 (2d Cir. 2000), that court also concluded that
IMMAct § 602 overrode ADAA § 7344(b), but did so based on IMMAct
§ 602(d), rather than § 602(c), with reasoning distinct from that of both the
BIA and the analysis we develop today. We discuss *Bell* later in this opin-
ion.

LEDEZMA-GALICIA v. HOLDER                    5007

(9th Cir. 2000); *see also INS v. St. Cyr*, 533 U.S. 289, 320 n.45 (2001) ("We only defer, however, to agency interpretations of statutes that, applying the normal 'tools of statutory construction,' are ambiguous. Because a statute that is ambiguous with respect to retroactive application is construed under our precedent to be unambiguously prospective, there is, for *Chevron* purposes, no ambiguity in such a statute for an agency to resolve.") (quoting *Chevron*, 467 U.S. at 843 n.9; other citations omitted). And here, when the canon militating against implied repeal is fully and correctly applied, it becomes clear that there is no statutory ambiguity to resolve here, and thus no reason to defer to the agency. Properly analyzed, the statute is not susceptible to multiple readings from among which the BIA could choose a reasonable one.

In these circumstances, as directed by *Chevron*'s step one, 467 U.S. at 842-43, we decide this case ourselves. We do not, as would the dissent, apply *Chevron* step two deference to a BIA interpretation of a statutory provision that, applying ordinary interpretation precepts, admits of only one apparent and unambiguous meaning. See Dissent at 5047-48.

Our question thus becomes whether § 7344(b) of the 1988 Act was impliedly repealed. Applying the extremely strict standards for finding an implied repeal, we conclude that it was not.

**[9]** As the Supreme Court has had the occasion to remind us recently, "repeals by implication are not favored and will not be presumed unless the intention of the legislature to repeal is clear and manifest." *Nat'l Ass'n of Home Builders*, 551 U.S. at 662 (internal quotation marks and alterations omitted). There are narrow circumstances in which implied repeals will be recognized, however. Broadly speaking,

> [i]t is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute

> covering a more generalized spectrum, unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary in order that the words of the later statute shall have any meaning at all.

*Traynor v. Turnage*, 485 U.S. 535, 548-49 (1988) (internal quotation marks, alterations, and citations omitted). More specifically, the Supreme Court has recognized "two well-settled categories of repeals by implication — (1) where provisions in the two acts are in irreconcilable conflict . . . ; and (2) [where] the later act covers the whole subject of the earlier one and is clearly intended as a substitute." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976).

Under either rubric, we cannot conclude that a later statute impliedly repeals an earlier one unless " 'the intention of the legislature to repeal [is] clear and manifest.' " *Nat'l Ass'n of Home Builders*, 551 U.S. at 662 (alterations in original) (quoting *Watt v. Alaska*, 451 U.S. 259, 267 (1981)). And such an intention is not "clear and manifest" simply because "the two statutes produce differing results when applied to the same factual situation." *Radzanower*, 426 U.S. at 155. "[T]hat," the Supreme Court has pronounced, "no more than states the problem. Rather, 'when two statutes are capable of coexistence, it is the duty of the courts . . . to regard each as effective.' " *Id.* (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)) (ellipsis in original).

Applying these principles, "[b]oth this court and the Supreme Court have found no [implied repeal] where, by creating minor exceptions to later-enacted statutes based on earlier ones, both statutes can be preserved." *Lujan-Armendariz*, 222 F.3d at 744. In *Donaldson v. United States*, 653 F.2d 414 (9th Cir. 1981), for example, we characterized as a "small puncture in a broad shield" the relationship between an earlier statute regarding resort owners' liability and a later statute that applied to all real property owners. *Id.* at 418. Although

the two statutes conflicted on their face, we reconciled them
by allowing the earlier statute to serve as a narrow exception
to the later one.

Similarly, *Lujan-Armendariz* preserved a provision in the
Federal First Offender Act (FFOA) as an exception to a later
law that defined the term "conviction" for immigration pur-
poses. The FFOA provision allowed courts "to sentence the
defendant in a manner that prevents him from suffering *any*
disability imposed by law on account of the finding of guilt."
222 F.3d at 735. The immigration law would otherwise have
conflicted with the FFOA. But we held that the earlier statute
was not "irreconcilable" with the latter — and thus not
impliedly repealed — because to resolve the conflict between
the two, "[w]e need[ed] only construe the later-enacted immi-
gration law as subject to the minor exception required by the
provisions of the earlier-enacted [FFOA]." *Id.* at 745; *see also
id.* at 744-45 (discussing similar analysis in *Radzanower* and
*NLRB v. Kolkka*, 170 F.3d 937 (9th Cir. 1999)).

Applying these precepts, ADAA § 7344 and IMMAct
§ 602(c) meet neither implied repeal standard.

### i.   *IMMAct § 602(c)*

**[10]** It is quite evident that IMMAct § 602(c) is a more
general statutory provision than ADAA § 7344(b). IMMAct
§ 602(c) directs generally that revised INA § 241 applies
without regard to whether "the facts, by reason of which an
alien is described as removable in [INA § 241]," occurred
prior to IMMAct's enactment. But it does not specifically
cover the impact of convictions for crimes generally, or the
impact of pre-1988 convictions in particular. ADAA
§ 7344(b), in contrast, narrowly and expressly covered both of
these considerations, and, even more narrowly, did so with
regard to the aggravated felony ground of deportation *only*.

**[11]** True, when applied after 1990 to pre-ADAA aggra-
vated felony convictions, the affirmative provision of

IMMAct § 602(c), which covers *all* of INA § 241, could, read literally, "produce [a] differing result when applied to the same factual situation" as ADAA § 7344(b). *Radzanower*, 426 U.S. at 155. That is, with the "except" clause out of the picture, IMMAct § 602(c), on its face, could be read to allow deportation for such convictions, while ADAA § 7344(b) would not. But, as *Radzanower* teaches, "that . . . states the [implied repeal] problem" but does not resolve it. *Id.* at 155. To resolve the problem, *Radzanower* and its progeny inform us, we must consider whether, like the preexisting narrow statutes at issue in *Lujan-Armendariz* and other cases, the earlier and narrower statutory provision here — ADAA § 7344(b) — must be construed as a minor exception to the very general language of the later statutory provision — IMMAct § 602(c). We determine that it must, for several reasons.

First, construing ADAA § 7344(b) as an exception to the broad reach of IMMAct § 602(c) would certainly be a "small puncture in a broad shield." *Donaldson*, 653 F.2d at 418. ADAA § 7344(b) addresses only one of many categories of deportable offenses. Aggravated felony convictions constitute one of the approximately thirty grounds for deportation and fourteen categories of deportable criminal offenses that IMMAct § 602(a) listed. Further, with the passage of time, the pool of otherwise deportable aliens who committed pre-ADAA aggravated felonies — already a small percentage of all deportable aggravated felons — will continue to shrink.

**[12]** Second, nothing in the text of the IMMAct indicates a "clear intention," *Radzanower*, 426 U.S. at 153, to apply the broad language of IMMAct § 602(c) so as to repeal the very precise, narrow directive of ADAA § 7344(b). Nor does anything in the text preclude interpreting ADAA § 7344(b) as a narrow exception to IMMAct § 602. The "except" clause of § 602(c) shows that Congress anticipated some tension between IMMAct § 602(c) and INA § 241, but, without more, we cannot conclude that this clause shows the requisite con-

LEDEZMA-GALICIA v. HOLDER                    5011

gressional intent to repeal a separate provision specifically
addressing retroactivity of a small subset of deportation
grounds, ADAA § 7344(b).[11]

Third, when ADAA § 7344(b) was enacted, INA § 241
already contained a provision nearly identical to the second
sentence of IMMAct § 602(c). INA § 241(d), 8 U.S.C.
§ 1251(d) (1982), provided:

> Except as otherwise specifically provided in this sec-
> tion, the provisions of this section shall be applicable
> to all aliens belonging to any of the classes enumer-

---

[11]*United States v. Novak*, 476 F.3d 1041 (9th Cir. 2007) (en banc) is not
to the contrary. *Novak* indicated that the inclusion of a broad statement —
"notwithstanding any other law" — in a new statutory provision can, in
some circumstances, support an implied repeal of earlier statutes, thereby
functioning similarly to an express reference to the superseded statute, and
demonstrating that Congress " 'intended to partially repeal [an] Act.' "
476 F.3d at 1052 (quoting *Lujan-Armendariz*, 222 F.3d at 747). The "ex-
cept" clause in IMMAct § 602(c) is not, however, tantamount to the "not-
withstanding any other law" clause in *Novak*. "Notwithstanding any other
law" in *Novak* showed an intent by Congress to supersede any and all
potentially conflicting laws. By contrast, because it expressly refers to
some version of INA § 241, the "except" clause in IMMAct § 602(c) indi-
cates only a recognition that INA § 241 — in some form — conflicts with
the rest of § 602(c). The "except" clause does not show any recognition
that Congress anticipated that *other* laws could also conflict with § 602(c),
or meant to address the continued viability of such laws.

Moreover, *Novak* did not state that "notwithstanding any other law" *is*,
standing alone, an express repeal. Instead, it recognized that any such
vaguely stated intent can be overridden by other statutory indicators. It
went on to consider the overall statutory scheme at length before conclud-
ing there was an intent to override an earlier conflicting statute. *See* 476
F.3d at 1046-53; *see also Lujan-Armendariz*, 222 F.3d at 747-48 (conclud-
ing that the absence of a "notwithstanding any other law" clause in one
provision of a statute signaled a lack of intent to repeal an earlier statute
because the same new statute had used "notwithstanding any other law"
clauses in several other places; *see also Kee Leasing Co. v. McGahan (In
re Glacier Bay)*, 944 F.2d 577, 582 (9th Cir. 1991) (holding that the
phrase "notwithstanding . . . any other law" did not settle the express
repeal question, when other laws were incorporated by reference).

ated in subsection (a) of this section, notwithstanding (1) that any such alien entered the United States prior to June 27, 1952, or (2) that the facts, by reason of which any such alien belongs to any of the classes enumerated in subsection (a) of this section, occurred prior to June 27, 1952.

At the time of its enactment, ADAA § 7344(b) unarguably presented an exception to former INA § 241(d), even though it was not an exception "specifically provided in this section" because ADAA § 7344(b) was a freestanding provision never incorporated in INA § 241. IMMAct § 602(c) performs essentially the same function as former INA § 241(d).**[12]** As ADAA § 7344(b) was a freestanding exception to former INA § 241(d), then the similar language of IMMAct § 602(c), making no mention whatever of ADAA § 7344(b), should also be read as compatible with ADA § 7344(b), rather than as doing away with that section *sub silentio*.

  **[13]** Fourth, the legislative history of IMMAct § 602 is of no additional assistance in demonstrating a clear and manifest intention to repeal ADAA § 7344(b). The conference report on the IMMAct makes clear that IMMAct § 602(a) was to replace the former INA § 241(a) by updating the grounds for deportation and " 'consolidat[ing] . . . related grounds in order to make the law more rational and easy to understand.' " *Matter of Lettman*, 22 I. & N. Dec. at 371 (quoting H.R. Rep. No. 101-955, at 119, 128 (1990), *reprinted in* 1990 U.S.C.C.A.N. 6784, 6793). But neither that conference report nor any other legislative history document we have found discusses IMMAct § 602(c) in any regard, or reports the intended effect

---

**[12]**As the BIA noted in *Matter of Lettman*, Congress repealed former INA § 241(d) as part of the Miscellaneous and Technical Immigration and Naturalization Amendments of 1991, Pub. L. No. 102-232, 105 Stat. 1733, 1756, "confirm[ing] . . . that the second sentence of [IMMAct] section 602(c) . . . was intended to serve the same function as former section 241(d)." 22 I. & N. Dec. at 373.

of the IMMAct on ADAA § 7344(b) or similar provisions. *Compare Novak*, 476 F.3d at 1051-52 (concluding that a statute impliedly repealed another in part because the legislative history showed Congress was aware of the potential conflict between the two laws when the later statute was passed).

**[14]** Fifth and finally, when other provisions of the IMMAct are taken into account, it becomes apparent that Congress did *not* intend to repeal ADAA § 7344(b), because doing so would have produced exceedingly odd results. *See generally Sheridan v. United States*, 487 U.S. 392, 402 n.7 (1988) ("courts should strive to avoid attributing absurd designs to Congress").

The peculiar outcome we must strive to avoid would result from the interaction of IMMAct § 602(c) and IMMAct § 501, which amended the definition of the term "aggravated felony."[13]

---

[13]Section 501 reads in full:

(a) IN GENERAL.—Paragraph (43) of section 101(a) (8 U.S.C. 1101(a)) is amended—

(1) by aligning its left margin with the left margin of paragraph (42),

(2) by inserting "any illicit trafficking in any controlled substance (as defined in section 102 of the Controlled Substances Act), including" after "murder,"

(3) by inserting after "such title," the following: "any offense described in section 1956 of title 18, United States Code (relating to laundering of monetary instruments), or any crime of violence (as defined in section 16 of title 18, United States Code, not including a purely political offense) for which the term of imprisonment imposed (regardless of any suspension of such imprisonment) is at least 5 years,"

(4) by striking "committed within the United States,"

(5) by adding at the end the following: "Such term applies to offenses described in the previous sentence whether in violation of Federal or State law," and

Section 501 broadened the definition of the term "aggravated felony" by, *inter alia*, adding certain controlled substance trafficking crimes and crimes of violence to the list of qualifying crimes in INA § 101(a)(43). IMMAct § 501(a), 104 Stat. at 5048. So, like the ADAA, the IMMAct treated the definition of "aggravated felony" as distinct from the aggravated felony ground for deportation. The IMMAct also separately specified the temporal reach of the new definition: IMMAct § 501(b) provided that four of the six amendments added by § 501, including the addition of "crimes of violence," would apply only "to offenses committed on or after the date of the enactment of [the IMMAct]." 104 Stat. at 5048. Two other amendments, including addition of certain controlled substance trafficking offenses, applied as if they had been included in the ADAA's 1988 definition of "aggravated felony." *Id.*

Section 501(b)'s reference to the ADAA indicates that Congress considered § 7344(b) of that Act as continuing in force. Were § 7344(b) impliedly repealed by IMMAct, the provision in IMMAct itself specifying that certain of the amendments contained in § 501(a) would be "effective as if included in the enactment of section 7342 of the Anti-Drug Abuse Act of 1988" would be pointless. For, if IMMAct § 602(c) in fact eliminated ADAA § 7344(b), the pivotal provision in the 1988 Act concerning the temporal impact of the

---

(6) by inserting before the period of the sentence added by paragraph (5) the following: "and also applies to offenses described in the previous sentence in violation of foreign law for which the term of imprisonment was completed within the previous 15 years."

(b) EFFECTIVE DATE.—The amendments made by subsection (a) shall apply to offenses committed on or after the date of the enactment of this Act, except that the amendments made by paragraphs (2) and (5) of subsection (a) shall be effective as if included in the enactment of section 7342 of the Anti-Drug Abuse Act of 1988 [defining "aggravated felony"].

LEDEZMA-GALICIA V. HOLDER                  5015

aggravated felony definition would no longer exist, and there
would be no reason to refer in IMMAct to the ADAA, rather
than to § 602(c) of IMMAct itself, as the source of effective
date provisions concerning amendments to the aggravated fel-
ony definition.[14]

Moreover, if § 501(b) is read as having incorporated the
temporal limitations of the ADAA with regard only to *some*
of the IMMAct's definitional amendments, that reading would
produce exceedingly peculiar results: For aliens who commit-
ted money laundering and crimes of violence — first defined
as aggravated felonies in IMMAct § 501(a) — the new aggra-
vated felony definition would apply prospectively, so that
only aliens who committed such crimes *after* IMMAct's pas-
sage in 1990 could be deported as aggravated felons. But
aliens who committed the controlled substance or state law
offenses referenced in IMMAct § 501(b) before 1988, like
aliens who committed aggravated felonies included in the
ADAA but were convicted *prior* to the ADAA's passage,
would suddenly become deportable with the enactment of the
IMMAct. Such a reading would mean that the IMMAct, for
no apparent reason, protected from deportation some, but not
all, aggravated felons who committed crimes before the
aggravated felony ground of deportation was created.

---

[14]ADAA § 7344 was one of a handful of provisions in the ADAA that
related to aggravated felony convictions. Two other ADAA provisions,
§ 7343 and § 7347, created separate procedures for detaining and deport-
ing aliens convicted of aggravated felonies. And like § 7344, those two
other provisions expressly provided that they only applied to post-ADAA
convictions. *See* § 7343(c), 102 Stat. at 4470 (limiting the applicability of
provisions regarding detention of aggravated felons); § 7347(c), 102 Stat.
at 4472 (limiting the applicability of provisions regarding expedited
deportation procedures for aggravated felons). These provisions do not
independently give meaning to § 501(b)'s mention of the ADAA, because
both of these provisions concern enforcement of the aggravated felony
ground of deportation and are thus logically tied to the temporal reach of
that ground.

5016                    LEDEZMA-GALICIA v. HOLDER

**[15]** This division would make no sense. Instead, in light of IMMAct § 501(b)'s reference to the ADAA, and § 501(b)'s apparent purpose to limit the instances in which criminal aliens were retroactively categorized as deportable, it becomes evident that the 1990 Congress intended generally to preserve the ADAA's determination that an aggravated felon would be deportable as such only if convicted of the crime in question, at the earliest, after November 18, 1988 — that is, after conviction of an aggravated felony became a deportable offense.

The dissent argues that the BIA read IMMAct § 602(c) as part of a " 'wholesale revision of 8 U.S.C. § 1251 [INA § 241], a 'new statutory scheme,' embracing 'comprehensive changes,' " Dissent at 5044 (quoting *Lettman*, 22 I. & N. Dec. at 374) — and thus, as a repeal by way of complete substitution, which is "not the sort of implied repeal that is discouraged by our presumption." *Id.* at 5045 (citing *Nat'l Ass'n of Home Builders*, 551 U.S. at 663). The dissent's view of the BIA opinion as properly resting on a complete substitution implied repeal theory and as therefore entitled to deference cannot be right, for three reasons.

First, the BIA stated in *Lettman* that its reading of § 602(c) "*comports with* our understanding that the purpose of § 602 of the 1990 Act was to completely revise the deportation grounds." *Lettman*, 22 I. & N. Dec. at 372 (emphasis added). That is, it came to its reading of § 602(c) quite apart from the complete revision rationale, namely because it considered § 602(c)'s reference to INA § 241(a) to encompass ADAA § 7344(b) *expressly*. The BIA never directly addressed the presumption against implied repeals before settling upon its interpretation of § 602(c). As we have already shown, ADAA § 7344(b) was never a part of INA § 241, so whatever the BIA believed about § 602(a) being "intended to replace former section 241(a) (1998) in its entirety," *Lettman*, 22 I. & N. Dec. at 371, such a complete replacement would not directly have affected the meaning of § 602(c).

**[16]** Second, even taking the BIA's decision "on its own terms" as the dissent suggests we should and presuming that the BIA regarded IMMAct § 602(c) as a complete revision of the deportation provisions of the INA, the BIA's statutory construction in *Matter of Lettman* was not "well within the general principles applicable to implied repeals." *See* Dissent at 5045. *Matter of Lettman* stated that "there would be no point in enacting a new statutory scheme if the intent was to keep the former version of the law in control whenever there was a difference between the old and the new. We cannot conclude that this was the intention of Congress." 22 I. & N. Dec. at 374. The BIA's reasoning, and the dissent's attempt to portray *Lettman* as properly applying the demanding requirements for an implied repeal, do not work.

*Posadas v. National City Bank*, 296 U.S. 497 (1936) explains:

> The cardinal rule is that repeals by implication are not favored. Where there are two acts upon the same subject, effect should be given to both if possible. There are two well-settled categories of repeals by implication — (1) where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the earlier one; and (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. *But, in either case, the intention of the legislature to repeal must be clear and manifest; otherwise, at least as a general thing, the later act is to be construed as a continuation of, and not a substitute for, the first act[.]*

*Id.* at 503 (emphasis added). As we have shown extensively, IMMAct was by no means clearly intended to repeal the ADAA generally, and the dissent fails to identify any "clear and manifest" congressional intent to do so. Instead, the dis-

sent is forced to "infer[ ]" a repeal, *see* Dissent, 5045, contrary to the Supreme Court's directive not to "infer a statutory repeal unless the later statute expressly contradicts the original act or unless such a construction is absolutely necessary . . . in order that the words of the later statute shall have any meaning at all." *Nat'l Ass'n of Home Builders*, 551 U.S. at 662 (internal quotation marks and alterations omitted). Board-member Rosenberg, dissenting from the majority decision in *Matter of Lettman*, showed at length why the IMMAct did not replace the aggravated felony provisions of the ADAA, but only redesignated them. 22 I. & N. Dec. at 389-93, 396-97 (Rosenberg, dissenting).[15] Moreover, *Matter of Lettman* does not discuss IMMAct § 501(b) and so does not recognize the inconsistency between that section and a wholesale revision implied repeal theory.

Third, *Chevron* does not apply here in the first place. As explained above, if reading the statutory language in light of the presumption against implied repeals resolves any potential ambiguity, *Chevron* deference has no role to play. *See Lujan-Armendariz*, 222 F.3d at 749; *St. Cyr*, 533 U.S. at 320 n.45.

**[17]** For all these reasons, we conclude that IMMAct § 602(c) did not repeal ADAA § 7344(b).

### ii.   *IMMAct § 602(d)*

The "effective date" provision in the following subsection,

---

[15]Boardmember Rosenberg further explained that until *Lettman*, case law from multiple courts of appeals and the BIA, as well as an INS policy statement, had so recognized, regarding ADAA § 7344 as in full force after 1990. *Id.* (citing *United States v. Baca-Valenzuela*, 118 F.3d 1223, 1229 n.12 (8th Cir. 1997); *Scheidemann v. INS*, 83 F.3d 1517, 1524 (3d Cir. 1996); *De Osorio v. INS*, 10 F.3d 1034, 1039 n.4 (4th Cir. 1993); *Matter of Chow*, 20 I. & N. Dec. 647, 651-52 (BIA 1993), *aff'd sub nom. Kin Sang Chow v. INS*, 12 F.3d 34 (5th Cir. 1993); Aggravated Felony: Applicability to Convictions Prior to November 18, 1988, Op. Off. General Counsel 91-3 (Feb. 22, 1991)).

IMMAct § 602(d), does not serve to overcome the presumption against implied repeal either. That section is fully consistent with interpreting ADAA § 7344(b)'s specific mandate that the aggravated felony ground of deportation is not retroactive as a "minor exception" to IMMAct § 602(c)'s general retroactivity provision.

IMMAct § 602(d) states that § 602's amendments to INA § 241 "shall not apply to deportation proceedings for which notice has been provided to the alien before March 1, 1991." The Second Circuit in *Bell* held that § 602(d) directs that the grounds for deportation in § 602(a) apply to *all* aliens who received notice on or after March 1, 1991. *See Bell*, 218 F.3d at 94.**[16]** But this mode of interpreting an effective date provision has been definitively rejected. As the Supreme Court held in *St. Cyr*, "a 'statement that a statute will become effective on a certain date does not even arguably suggest that it has any application to conduct that occurred at an earlier date.' " *St. Cyr*, 533 U.S. at 317 (quoting *Landgraf*, 511 U.S. at 257). Thus, a simple effective date provision cannot impliedly repeal all previous temporal limitations on the application of grounds of deportability.

### iii.   Summary

**[18]** In sum, application of the implied repeal doctrine demands that we interpret § 602 as leaving the temporal limitation on the aggravated felony ground of deportation intact.

---

**[16]**Unlike the BIA and the other circuits that have considered the question, *Bell* did not conclude that IMMAct § 602(c) overrode ADAA § 7344(b). The BIA's analysis in *Matter of Lettman*, the Second Circuit decided, was not reasonable because it did not employ the presumption against retroactively applied statutes. Applying that presumption, the Second Circuit held that IMMAct § 602(c) could not apply to pre-ADAA aggravated felony convictions. 218 F.3d at 93-94. Up to that point, *Bell* supports our somewhat different analysis, as it recognizes that the *Matter of Lettman* statutory analysis is not sufficiently persuasive to overcome presumptive rules of statutory interpretation cutting in the other direction.

We therefore need not consider Ledezma-Galicia's argument that the BIA's interpretation also violates our presumption against retroactively applied statutes. *See generally Landgraf*, 511 U.S. at 280 (describing the presumption against retroactivity); *Hovsepian*, 359 F.3d at 1156 (concluding, in a related context, that the *Landgraf* presumption did not apply to IMMAct § 602, because § 602(c) represented an express statement that IMMAct § 602(a) should be applied retroactively); *see also Bell*, 218 F.3d at 93-94 (concluding that *Matter of Lettman* was unreasonable because it failed to take into account the *Landgraf* presumption against retroactively applied statutes). We do, however, address the government's concern that our analysis today is foreclosed by our previous applications of IMMAct § 602(c).

### 3.    *Hovsepian* **and** *Yacoubian*

[19] We previously considered IMMAct § 602(c) in *Hovsepian* and *Yacoubian*. These cases concerned two aliens who were convicted at trial of destructive device offenses in 1984, prior to enactment of the ADAA. At that time, the convictions would not have rendered the aliens deportable under the firearms category of offenses. In 1988, however, the ADAA, in addition to defining the term "aggravated felony" and designating aggravated felonies as a category of deportable offense, amended INA § 241(a) to expand the list of firearms and destructive device convictions that could serve as a basis for deportation. *See* ADAA § 7348(a).[17] At the same

---

[17]More specifically: Prior to the ADAA, INA § 241(a)(14) rendered deportable an alien who "at any time after entry, shall have been convicted of possessing or carrying in violation of any law any weapon which shoots or is designed to shoot automatically or semiautomatically more than one shot without manual reloading, by a single function of the trigger, or a weapon commonly called a sawed-off shotgun." 8 U.S.C. § 1251(a)(14) (1982). The ADAA amended that provision "by inserting after 'law' the following: 'any firearm or destructive device (as defined in paragraphs (3) and (4), respectively, of section 921(a) of title 18, United States Code, or any revolver or.' " ADAA § 7348(a); *see also* 8 U.S.C. § 1251(a)(14) (1988).

LEDEZMA-GALICIA v. HOLDER                    5021

time, in language identical to that of ADAA § 7344(b),
ADAA § 7348(b) limited the amendment to the firearms
ground to convictions on or after the ADAA's enactment.
Despite that temporal limitation, we have twice held that
IMMAct § 602(c) rendered aliens deportable based on their
pre-ADAA convictions. *Hovsepian*, 359 F.3d at 1156-57;
*Yacoubian*, 24 F.3d at 6-7.

**[20]** Because of the similarity between the ADAA tempo-
ral limitation at issue in *Hovsepian* and *Yacoubian* and
ADAA § 7344(b), at issue here, those cases inform our analy-
sis today. But they do not control our resolution of Ledezma-
Galicia's petition, because the ADAA and the IMMAct
treated the offenses at issue in *Hovsepian* and *Yacoubian* dif-
ferently from aggravated felonies in a critical respect. In INA
§ 241(a), which lists the grounds for deportation, the ADAA
inserted only a reference to "aggravated felony" convictions
generally; it did not further define the term "aggravated felo-
ny."[18] Then, the ADAA inserted into the INA's definitional
section, *see* INA § 101(a) (8 U.S.C. § 1101(a)), a definition of
the term "aggravated felony." For firearms offenses, in con-
trast, the ADAA made no such structural division, but instead
inserted into INA § 241(a)(14) directly an expanded list of
firearms the illegal possession of which would render an alien
deportable.

The IMMAct continued the ADAA's distinct structural
treatment of the aggravated felony and firearm categories of

---

[18]For aggravated felony convictions, the ADAA's distinction between
the term's definition and its relevance to deportability has proven practical
for two reasons. First, the ADAA and later statutes used the shorthand
term "aggravated felony" in several contexts other than deportability. *See,
e.g.*, 8 U.S.C. § 1158(b)(2) (regarding asylum eligibility); 8 U.S.C. § 1228
(regarding expedited removal proceedings); 8 U.S.C. § 1231(b)(3)(B)(iv)
(regarding eligibility for withholding of removal). Second, Congress has
been able to broaden the scope of the aggravated felony concept in all its
applications by amending the definition of "aggravated felony" without
having to amend separately each statute in which the concept is used.

deportable offenses. Like the ADAA, the IMMAct amended
the "aggravated felony" definition in INA § 101, while con-
tinuing to reference only the term "aggravated felony" in INA
§ 241(a), the statutory list of grounds for deportation. By con-
trast, the IMMAct once again broadened the category of
deportable firearms offenses by amending INA § 241(a)
directly. As a result of this distinction, there was no need for
a provision of the IMMAct pertinent to firearms offenses that
is parallel to § 501 of that statute,[19] and there is none.

These two related structural distinctions between the aggra-
vated felony and firearms categories of offenses are critical
here. Combined, they explain why the implied repeal question
in *Hovsepian* and *Yacoubian* was fundamentally different
from the one we decide today:

First, because there is no IMMAct provision applicable to
firearms offenses that is parallel to IMMAct § 501(b), no
peculiar result has ensued from our holding that the IMMAct
repealed ADAA § 7348(b), regarding firearms deportations.
As we have seen, because of IMMAct § 501(b), an implied
repeal of ADAA § 7344(b), with respect to pre-ADAA aggra-
vated felony convictions covered by the ADAA but not by the
IMMAct, would mean that some aggravated felons could be
deported for convictions that occurred before aggravated fel-
ony convictions were made a ground for deportation, while
others could not, for no discernible reason. But the implied
repeal of ADAA § 7348(b), regarding firearms deportations,
creates no comparably odd outcome. The IMMAct did not
include a separate temporal reach provision governing fire-
arms convictions that is in tension with IMMAct § 602(c).

Second, IMMAct § 602(a) substantially — and substan-
tively — changed the firearms ground for deportability from

---

[19]Section 501, as discussed above, limited the applicability of the broad-
ened reach of the aggravated felony ground to post-IMMAct convictions.

the version contained in the ADAA.[20] In doing so, the BIA
concluded, IMMAct § 602(a) "enact[ed] . . . a *new* statutory
provision that completely supersedes all former versions of
that [firearms] deportation ground." *Matter of Chow*, 20 I. &
N. Dec. at 650 (emphasis added). In other words, IMMAct
§ 602(a) made ADAA § 7348(b), regarding the deportation
consequences of certain pre-ADAA firearms convictions, no
longer applicable at all, working a complete revision of the
firearms ground for deportation.[21]

In contrast, IMMAct § 602(a) changed only the statutory
placement of the aggravated felony ground within INA
§ 241(a), but made no change to the substance of the aggra-
vated felony ground for deportation. *Compare* 8 U.S.C.
§ 1251(a)(4)(B) (1988) ("Any alien in the United States shall,
upon the order of the Attorney General, be deported who —
. . . (4) . . . (B) is convicted of an aggravated felony at any
time after entry") *with* 8 U.S.C. § 1251(a)(2)(A)(iii) (1988
Supp. II) ("Any alien who is convicted of an aggravated fel-
ony at any time after entry is deportable"). So the complete
revision implied repeal theory was applicable in *Hovsepian*
and *Yacoubian*, but is not applicable here. *See also Matter of*

---

[20]After IMMAct, aliens were deportable if after entry they had been
"convicted under any law of purchasing, selling, offering for sale,
exchanging, using, owning, possessing, or carrying in violation of any
law, any weapon, part, or accessory, which is a firearm or destructive
device (as defined in section 921(a) of title 18, United States Code)."
IMMAct § 602(a); *see also* 8 U.S.C. § 1251(a)(2)(C) (1988 Supp. II).

[21]*See Chow v. INS*, 12 F.3d 34, 37-38 (5th Cir. 1993) (applying *Chevron*
deference to approve the BIA's interpretation of IMMAct § 602(a));
*Yacoubian*, 24 F.3d at 7 (citing the Fifth Circuit opinion in *Chow*).

We note that *Matter of Chow* is fully consistent with the principles of
our implied repeal jurisprudence. *Radzanower* instructs that one "well-
settled categor[y] of repeals by implication" consists of instances when
"the later act covers the whole subject of the earlier one and is clearly
intended as a substitute." 426 U.S. at 154. Although *Matter of Chow* did
not cite *Radzanower* or related cases, the BIA's conclusion in that case is
little more than a paraphrase of *Radzanower*'s description of an appropri-
ate implied repeal.

*Lettman*, 21 I. & N. Dec. at 389-90 (Rosenberg, dissenting) (explaining that "with section 602(a) of the 1990 Act Congress only changed the numerical designation of some deportation grounds, while with others, such as that governing firearms violations, it completely substituted the text of the new section for that of the former section" (internal citations omitted)).

To summarize: For pre-ADAA aggravated felonies, our implied repeal analysis is informed by considerations quite different from those relevant to pre-ADAA firearms offenses. We hold that unlike ADAA § 7348(b), regarding pre-ADAA firearms offenses, ADAA § 7344(b), regarding pre-ADAA aggravated felonies, survived the IMMAct.

## B.  IIRIRA

**[21]** To complete the saga of ADAA § 7344(b), we consider finally whether that provision also survived IIRIRA, the 1996 reform of immigration law that added "sexual abuse of a minor" to the aggravated felony definition, IIRIRA § 321(a), and made the amended definition applicable to all aliens, regardless of their date of conviction, IIRIRA § 321(b). Noting our prior holding that IIRIRA "clearly manifested an intent for the amended definition of aggravated felony to apply retroactively," *Aragon-Ayon*, 206 F.3d at 851, the district court in Ledezma-Galicia's habeas proceeding concluded that IIRIRA § 321(b) erased the ADAA's temporal limitation because "changing the meaning of a statutory term necessarily changes the effect of the statute using that term." *Ledezma-Galicia*, 294 F. Supp.2d at 1197 (D. Or. 2003); *id.* at 1195 (quoting *Aragon-Ayon*).

**[22]** We cannot agree. As we have clarified, "it is settled law that the . . . *definitional* statute, IIRIRA § 321, which defines certain crimes as aggravated felonies, applies *regardless* of the date of the crime." *Lopez-Castellanos v. Gonzales*, 437 F.3d 848, 852 (9th Cir. 2006). But IIRIRA's effective

date provisions do not control "the substantive immigration
*consequences* of IIRIRA" (emphasis added) — even when
those consequences turn on an aggravated felony conviction.
*Id.* at 852-54 (recognizing that the definition of "aggravated
felony" applies to all aliens, but nevertheless analyzing sepa-
rately the temporal reach of an IIRIRA provision making
aggravated felons ineligible for cancellation of removal).[22] As
Ledezma-Galicia emphasizes, there are a host of conse-
quences of being an aggravated felon other than removability.[23]
And in addition to this court, both the Supreme Court and the
immigration agencies have consistently determined the tem-
poral reach of those consequences of aggravated felony con-
victions separately from the temporal reach of the aggravated
felony definition, even in the wake of IIRIRA.[24] *See, e.g.*, 8

---

[22]None of the cases that established the retroactivity of the aggravated
felony definition discussed whether a pre-1988 aggravated felony convic-
tion could trigger deportability. *Park v. INS*, 252 F.3d 1018 (9th Cir.
2001), and *Aragon-Ayon* addressed post-1988 convictions, which indispu-
tably triggered deportability as aggravated felonies if the 1996 statute's
definition of aggravated felony was deemed applicable. *Valderrama-
Fonseca v. INS*, 116 F.3d 853 (9th Cir. 1997), considered the conse-
quences of a 1985 conviction. But in that case too, we did not need to con-
sider the interaction between IIRIRA § 321 and the ADAA. Instead, we
determined that § 321(c), which limited § 321(a) to "actions taken" after
September 30, 1996, precluded the application of IIRIRA to the case,
holding that "actions taken" referred to "anything done by the Attorney
General after the effective date (without regard to when the conviction
occurred) except for what is done solely on account of the alien's re-
entering the country." 116 F.3d at 856-57. In *Valderrama-Fonseca*, no
such actions were "taken" after the effective date of IIRIRA, so § 321(a)'s
amendment of the aggravated felony definition was inapplicable. *Id.* at
857.

[23]Ledezma-Galicia identifies nineteen distinct consequences of aggra-
vated felon status.

[24]In our analysis of the IMMAct earlier in this opinion, we expressed
concern about the tension between the BIA's reading of IMMAct § 602(c)
— regarding the retroactivity of the deportation consequences of aggra-
vated felonies — and IMMAct § 501(b) — regarding the retroactivity of
the aggravated felony definition. Our consternation does not, however,
imply that Congress cannot separately define the temporal reach of the

C.F.R. § 316.10(b)(1) (limiting the aggravated felony bar to good moral character determinations to convictions that occurred on or after November 29, 1990); *see also St. Cyr*, 533 U.S. at 315 (holding that a 1996 law that prohibited aggravated felons from applying for relief from deportation could not apply retroactively); *Matter of A-A-*, 20 I. & N. Dec. 492, 495-98 (BIA 1997) (discussing individual temporal limitations on the consequences of aggravated felonies).

**[23]** There has been no suggestion that any provision in IIRIRA other than § 321 affects ADAA § 7344(b). We therefore hold that the ADAA's temporal limitation on aggravated felony removals survived not only the IMMAct but also IIRIRA. In other words, the law remains that pursuant to ADAA § 7344(b), the aggravated felony ground for deportation "shall apply [only] to any alien who has been convicted, on or after the date of enactment of [ADAA], of an aggravated felony."

## IV.    CONCLUSION

**[24]** Ledezma-Galicia is not removable by reason of being an aggravated felon, because 8 U.S.C. § 1227(a)(2)(A)(iii) does not apply to convictions, like Ledezma-Galicia's, that occurred prior to November 18, 1988. Consequently, we grant Ledezma-Galicia's petition for review, vacate the district

---

aggravated felony definition and the temporal reach of its consequences. Our objection was only to an interpretation of the two temporal reach provisions that would result in lack of uniformity for different aggravated felonies with regard to whether convictions that predated the entire aggravated felony concept could be grounds for deportation. No such tension occurs if, as we hold, the expanded aggravated felony definition applies to all convictions, but only triggers deportability for convictions after the statute making the definition pertinent to deportation was enacted. Under this interpretation of the relevant statutes, all aggravated felons — as that term is presently defined — are treated alike, in terms of deportability. Nothing in IIRIRA suggests a contrary, non-uniform intent.

LEDEZMA-GALICIA V. HOLDER                 5027

court's denial of his habeas petition, and dismiss his appeal as
moot.

**No. 03-73648: PETITION FOR REVIEW GRANTED;
REMANDED.**

**No. 04-35048: VACATED and DISMISSED.**

LEDEZMA-GALICIA v. HOLDER                5029

**Volume 2 of 2**

5030                 LEDEZMA-GALICIA v. HOLDER

---

BYBEE, Circuit Judge, dissenting:

There is no polite way to say this: The statutory scheme we
are required to parse in this case is a mess. It is a model of
ambiguity and misdirection. That fact, of course, does not
give us license to impose our own reading on the statute, but
means that we must accept an agency's construction of the
statute so long as it is reasonable. *Chevron, USA, Inc. v. Natural
Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). The
majority declines to accept the BIA's reading and imposes its
own. Whether the majority has improved on the BIA's analysis
is debatable—although for the reasons I explain, I quite
doubt it—but we do not have to be confident of our analysis,
we only have to be confident that the BIA's is reasonable.
And of that, I am 100 percent confident. Indeed, so twisted
and complex are the provisions at issue here that—short of
spitting in a bucket—the BIA could have concluded almost
anything in this case and been reasonable. If *Chevron* means
anything, this is a classic case for deferring to the agency.

In September 1988, an Oregon state court convicted Ramon
Ledezma-Galicia of sodomy for sexually molesting a minor.

The crime for which he was convicted constitutes "sexual abuse of a minor," which is an aggravated felony under current law, *see* 8 U.S.C. § 1101(a)(43)(A), and therefore a basis for removal under 8 U.S.C. § 1227(a)(2)(A)(iii). The BIA, consistent with its en banc decision in *In re Lettman*, 22 I. & N. Dec. 365 (BIA 1998), held that he is removable. In *Lettman*, the BIA found that the relevant statutory provisions were "difficult to decipher," "ambiguous," and "capable of different readings," but reasoned that the 1990 amendments to the INA "dictate[ ] that any alien who has been convicted of a crime defined as an aggravated felony, and who was placed in deportation proceedings on or after March 1, 1991, is deportable regardless of when the conviction occurred." *Id.* at 372, 378.

The majority disagrees. Applying the "canon militating against implied repeal," the majority declares that "the statute is not susceptible to multiple readings," but "admits of only one apparent and unambiguous meaning." Maj. Op. at 5006-07. As a result, it claims that we owe no *Chevron* deference and "we decide this case ourselves." *Id.* at 5007. Applying de novo review, it then holds that Ledezma cannot be removed because the law making aliens convicted of aggravated felonies deportable does not apply to aliens convicted of aggravated felonies prior to November 18, 1988. *Id.* at 4995, 5009-10. The majority admits that this creates "a 'small puncture in a broad shield' " because aliens are deportable for any number of offenses committed prior to 1988. *Id.* at 5010 (citation omitted). According to the majority's decision, Congress intended to create this "minor exception," *id.*, and as a result, aliens who sexually abuse minors will not be subject to deportation so long as they committed the crime before 1988.

In the process of discarding the BIA's considered decision, the majority not only takes issue with the agency, but it also creates a clear split with the Fourth and Eleventh Circuits, which recognized that the statutes are ambiguous and have

5032    LEDEZMA-GALICIA v. HOLDER

held that the BIA's construction of the INA in *Lettman* is reasonable. *Lettman v. Reno*, 207 F.3d 1368 (11th Cir. 2000) (opinion per Goodwin, J.); *Lewis v. INS*, 194 F.3d 539 (4th Cir. 1999). Furthermore, the majority's decision flies in the teeth of our en banc decision in *United States v. Hovsepian*, 359 F.3d 1144 (9th Cir. 2004). In *Hovsepian* we approved the same reasoning the BIA employed in this case as applied to a parallel section of the same act. Indeed, were the issue to come before the BIA again, *Hovsepian* would likely compel the conclusion the BIA reached in *Lettman*.

In crafting this decision, the majority has compiled quite a group of unreasonable readers. Because I must add myself to this list, I respectfully dissent.

I

My objections to the majority's analysis begin with the familiar *Chevron* two-step. 467 U.S. at 842-43. First, the reviewing court must determine whether the statute is ambiguous: "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* If, however, the statute is silent or ambiguous then the reviewing court "does not impose its own construction of the statute, but rather it decides 'whether the agency's answer is based on a permissible construction of the statute.' " *Gonzales v. Dep't of Homeland Sec.*, 508 F.3d 1227, 1235 (9th Cir. 2007) (quoting *Chevron*, 467 U.S. at 843). The agency's interpretation is entitled to deference "unless that interpretation is contrary to the plain and sensible meaning of the statute." *Simeonov v. Ashcroft*, 371 F.3d 532, 535 (9th Cir. 2004). If a court concludes that an agency's decision "was based, at least in part, on ambiguity in the applicable statutes" then the court "must give deference to the agency's resolution of these ambiguities." *Gonzales*, 508 F.3d at 1235.

The majority opinion essentially concludes that the BIA was unreasonable because it was wrong. But that is a conclu-

sion we can reach only if we are at step one of *Chevron*, where we have an "unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 843. If anything is clear about the present case, it is that Congress has failed to unambiguously express its intentions. As much as I am reluctant to forge through these complicated acts, I will do so to point out the ambiguities, and to put in context the BIA's construction.

II

A

Congress first created the category of crimes denominated "aggravated felonies" in the Anti-Drug Abuse Act of 1988 ("ADAA"), Pub. L. No. 100-690, 102 Stat. 4181. The ADAA added the category of an alien "who is convicted of any aggravated felony at any time after entry" to the pre-existing statutory grounds for deportation, which were enumerated in Section 241(a) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4). *See* ADAA § 7344(a). The ADAA defined the term "aggravated felony" as "any drug trafficking crime . . . any illicit trafficking in any firearms or destructive devices . . . or any attempt or conspiracy to commit any such act, committed within the United States." *Id.* § 7342. In 1988, the crime for which Ledezma had been convicted—sodomy for sexually molesting a minor—did not fall within this original definition of aggravated felony.

The provision adding aggravated felony as a ground for deportation was immediately followed by an applicability clause:

> (b) APPLICABILITY. — The amendments made by subsection (a) shall apply to any alien who has been convicted, on or after the date of the enactment of this Act, of an aggravated felony.

ADAA § 7344(b). Thus, under the ADAA, the deportation provisions for aggravated felons applied only *prospectively* to

aliens convicted of an aggravated felony on or after November 18, 1988. It follows that as of 1988 Ledezma would not fall under the new deportation provisions both because his crime did not qualify and because he had been convicted prior to this date.

### B

In 1990, Congress passed the Immigration Act of 1990 (the "IMMAct"), Pub. L. No. 101-649, 104 Stat. 4978, "to change the level, and preference system for admission, of immigrants to the United States, and to provide for administrative naturalization, and for other purposes." *Id.* The IMMAct did not merely amend prior law, it overhauled § 241(a) by repromulgating the entire section. Thus, § 602 replaced the grounds for deportation in § 241(a) with a revised list that continued to include conviction for an "aggravated felony." IMMAct § 602(a); *see* INA § 241(a)(2)(A)(iii). Section 602(c) described how the revised section would apply:

> (c) SAVINGS PROVISION — Notwithstanding the amendments made by this section, any alien who was deportable because of a conviction (before the date of the enactment of this Act) of an offense referred to in paragraphs (15), (16), (17), or (18) of section 241(a) of the Immigration and Nationality Act, as in effect before the date of the enactment of this Act, shall be considered to remain so deportable. Except as otherwise specifically provided in such section and subsection (d), the provisions of such section, as amended by this section, shall apply to all aliens described in subsection (a) thereof notwithstanding that (1) any such alien entered the United States before the date of the enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, occurred before the date of the enactment of this Act.

LEDEZMA-GALICIA V. HOLDER                5035

The meaning of the first sentence is clear: any alien who could have been deported for certain acts before the passage of the IMMAct can still be deported.

The second sentence is a nightmare. The sentence begins "[e]xcept as otherwise specifically provided in such section and subsection (d)." It is unclear what "such section" means. One possibility (favoring Ledezma) is that "such section" refers to INA § 241(a) as in effect before the enactment of the IMMAct, which might include the "applicability" provision in ADAA § 7344(b). Because § 7344(b) "specifically provide[s]" that the "aggravated felony" category does not apply to crimes committed prior to November 18, 1988, under this reading, IMMAct § 602(c) could except Ledezma from deportation on that ground. A second possibility (favoring the government) is that the second reference in § 602(c) to "such section" makes it clear that it is "such section, as amended by this section." If "such section" refers to § 241(a) of the INA, as amended by the IMMAct, then § 241(a), as amended, is retroactive and an alien (like Ledezma) who committed a qualifying felony before 1988 may be deported. To sum, under the first interpretation, we would read § 602(c) to say:

> Except as otherwise specifically provided by former INA § 241(a), INA § 241(a), as amended by IMMACT § 602(a), shall apply to all aliens described in section INA § 241(a) notwithstanding that (1) any such alien entered the United States before the date of the enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, occurred before the date of the IMMAct.

If the second interpretation prevailed, we would read § 602(c) in this way:

> Except as otherwise specifically provided, INA § 241(a), as amended by IMMAct § 602(a), shall

5036          LEDEZMA-GALICIA v. HOLDER

apply to all aliens described in section INA § 241(a) notwithstanding that (1) any such alien entered the United States before the date of the enactment of this Act, or (2) the facts, by reason of which an alien is described in such subsection, occurred before the date of the IMMAct.

In my view, the latter reading is consistent with the overall theme of § 602, which expands rather than restricts the statute's applicability. It is also consistent with the idea that IMMAct was a recodification of INA § 241, because it means that § 602(c) is the sole provision we need consult to determine § 602(a)'s applicability. I believe that the second sentence creates a rule, applicable to all of the provisions of INA § 241(a), that (unless the Act specifically directs otherwise) an alien is deportable for the enumerated grounds even if such conduct occurred before the date of the IMMAct was enacted. I admit, however, that the second sentence of § 602(c) is so badly written that no one can opine on its meaning with absolute confidence. In any event, enactment of the IMMAct had no immediate impact on Ledezma's immigration status, because "sexual abuse of a minor" was not yet defined as an "aggravated felony," and therefore was not a ground for deportation under INA § 241(a).

C

In the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, div. C, title III, 110 Stat. 3009-546, Congress added "sexual abuse of a minor" to the definition of aggravated felony, rendering Ledezma's sodomy conviction for sexually abusing a minor a deportable offense. *See* IIRIRA § 321(a)(1), *codified at* 8 U.S.C. § 1101(a)(43)(A). Furthermore, Congress explicitly provided that this new definition of aggravated felony applied retroactively. IIRIRA § 321(b) provided:

EFFECTIVE DATE OF DEFINITION. — Section 101(a)(43) (8 U.S.C. 1101(A)(43)) is amended by

LEDEZMA-GALICIA v. HOLDER            5037

adding at the end the following new sentence: "Not-withstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph."

Additionally, Congress provided that "[t]he amendments made by this section shall apply to actions taken on or after the date of the enactment of this Act, regardless of when the conviction occurred." IIRIRA § 321(c). When read together, the two provisions required that the modified definition of aggravated felony apply to convictions that occurred before the enactment of IIRIRA, but only if the immigration proceeding were initiated after enactment of the Act.[1]

To summarize, in 1988, Congress made aliens convicted of an aggravated felony deportable. ADAA § 7344(a). The term "aggravated felony" was narrowly defined and did not include

---

[1]Although IIRIRA § 321(c) clearly applies these definitional changes retroactively, this fact does not resolve the present case. Contrary to the government's position, and subsequent to its briefing in this case, we held that § 321(c) did not retroactively apply the "substantive immigration consequences" resulting from the changed definition of aggravated felony. *Lopez-Castellanos v. Gonzalez*, 437 F.3d 848, 852 (9th Cir. 2006). This holding is in direct conflict with the position taken by the First and Second Circuits, which the government relied on in its briefs. *See Sousa v. INS*, 226 F.3d 28, 33-34 (1st Cir. 2000) ("[I]n IIRIRA, Congress made quite clear its intent to apply the enlarged definition retroactively and this explicit provision makes sense *only* if Congress also intended that this enlarged definition trigger removal, regardless of when the crime occurred."); *Kuhali v. Reno*, 266 F.3d 93, 110-11 (2d Cir. 2001) (finding that a "1980 conviction is clearly encompassed by the new provisions"). We failed to recognize the conflict.

Effectively, IIRIRA § 321(c) provides a second avenue for the conclusion reached by the BIA. *See Lettman*, 22 I. & N. Dec. at 368 n.4 (declining to address the impact of IIRIRA § 321(c)). I note this because the *result* we reach today conflicts not only with the Fourth and Eleventh Circuits, *see infra*, but, as a result of *Lopez-Castellanos*, with the First and Second Circuits as well.

sexual abuse of a minor. ADAA § 7342. Congress provided
that the aggravated felon provision would not apply retroac-
tively to aliens who were convicted prior to the enactment of
the ADAA. ADAA § 7344(b). In 1990, Congress generally
revised the grounds for deportation in the INA. IMMAct
§ 602(a). Congress expanded the definition of aggravated fel-
ony, but the definition still did not include sexual abuse of a
minor. IMMAct § 501. Simultaneously, Congress provided
that the new deportation provisions would apply to aliens
even if the facts making them deportable occurred before
enactment of the IMMAct, thus overriding the previous appli-
cability provision. Finally, in 1996, Congress amended the
definition of aggravated felony to include sexual abuse of a
minor, thus making Ledezma an alien convicted of an aggra-
vated felony. IIRIRA § 321(a)(1). Congress chose to apply
the amended definition retroactively to convictions that
occurred prior to the enactment of IIRIRA. *Id.* § 321(b). Read
together, these immigration statutes made Ledezma subject to
removal.

### III

### A

In a lengthy decision in *In re Lettman*, the BIA reviewed
these acts, the legislative history, prior judicial decisions and
the arguments on both sides. It then held that an alien is sub-
ject to deportation regardless of the date of conviction if his
crime fits within the definition of aggravated felony. 22 I. &
N. Dec. 365, 366 (BIA 1998) (en banc). The BIA concluded
that the language of IMMAct § 602(c) "eliminated the date
restriction on the aggravated felony ground set forth in the
ADAA." *Id.*

The BIA began from the premise that IMMAct § 602(a)
"completely revised the deportation grounds that were found
in section 241(a) of the Act," by reorganizing, renumbering
certain grounds, and substantively revising the grounds for

LEDEZMA-GALICIA v. HOLDER                5039

deportation. *Id.* at 371. "Section 602(a) of the 1990 Act was therefore intended to replace former section 241(a) . . . in its entirety." *Id.*

The Board then turned to the effect of § 602(a). It "acknowledge[d] from the outset that the second sentence of section 602(c) is difficult to decipher, even after considerable examination," and found "it to be an ambiguous provision, which is capable of different readings . . . ." *Id.* at 372. After considering the arguments of the parties and of amici, the Board concluded that "such section" must refer to INA § 241, as amended by the IMMAct, and that "except as otherwise provided in section 241, as amended in 1990, an alien is deportable for an enumerated ground despite the date of entry or the date of the underlying facts which establish deportability." *Id.* The BIA reasoned that, although the matter was not free from doubt, it made "no sense" that Congress would "enact a whole new provision, yet keep the former version perpetually intact." *Id.* The rule adopted by the BIA was straightforward: "any alien who has been convicted of a crime defined as an aggravated felony, and who was placed in deportation proceedings on or after March 1, 1991, is deportable regardless of when the conviction occurred." *Id.* at 378.

The Eleventh Circuit reviewed the BIA's decision in *Lettman v. Reno*, 207 F.3d 1368 (11th Cir. 2000), and agreed with its analysis. In an opinion by our own Judge Goodwin, the court held that "INA section 241(a)(2)(A)(iii) authorizes the deportation of aliens convicted of aggravated felonies at any time after entry." *Id.* at 1369. As the court explained the problem:

> Our decision . . . turns on whether, as the BIA held, the aggravated felony deportation ground applies "notwithstanding . . . that the facts . . . occurred before the date of this Act." IMMACT § 602(c). The question depends largely on the application of "such section" in section 602(c). If "such section" refers to

5040          LEDEZMA-GALICIA v. HOLDER

> the aggravated felony ground with the date restric-
> tion *intact*, as enacted by the ADAA in 1988 (prior
> to IMMACT), then the language stating "[e]xcept as
> otherwise specifically provided in *such section*"
> would remove the aggravated felony ground from
> the ambit of [§ 602(c)]. On the other hand, as the
> Government argues, if "such section" refers to the
> aggravated felony ground *without* the date restric-
> tion, as enacted by IMMACT (which did not
> expressly reenact the date restriction), then
> [§ 602(c)] survives to effect deportability, unaffected
> by [ADAA § 7344(b)].

*Id.* at 1371 (parentheticals omitted). The court concluded that
the "BIA reasonably interpreted 'such section' to refer to the
aggravated felony ground without the ADAA date restric-
tion." *Id.*

The Fourth Circuit arrived at the same conclusion in *Lewis
v. INS*, 194 F.3d 539 (4th Cir. 1999). The court acknowledged
the ambiguity of the statute, stating it "cannot conclude that
congressional intent is clear and unequivocal here." *Id.* at 545.
The court concluded that "the Board's interpretation is cer-
tainly reasonable—indeed, we would likely reach the same
conclusion." *Id.*[2]

---

[2]The Second Circuit came to a different conclusion in *Bell v. Reno*, 218
F.3d 86 (2d Cir. 2000). Agreeing that § 602(c) is ambiguous, and finding
the alien's arguments "abl[e]" and the government's arguments "convinc-
ing[ ]," it nevertheless concluded that the BIA's decision in *Lettman* was
"not sustainable because it runs afoul of the long-standing presumption
against the retroactive application of ambiguous statutory provisions." *Id.*
at 92, 93 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994)). We
rejected the *Landgraf* argument, en banc, in *Hovsepian*. *See* 359 F.3d at
1156-57.

## B

The majority opinion has not improved on the BIA's reasoning. Indeed, it falls well short of demonstrating that the BIA's construction of a badly written set of statutes is not a permissible one.

### 1

The majority concludes that the BIA's interpretation of its governing statutes is "not entitled to *Chevron* deference, as its reasoning cannot be squared with the actual statute." Maj. Op. at 5006. It concludes that the BIA erred because "it turns out" that "it does not matter whether IMMAct § 602(c) should be read to refer to the pre-IMMAct or the post-IMMAct version of § 241(a)." Maj. Op. at 5004.

My first objection is to the majority's approach, which effectively turns *Chevron* into a nullity. The Supreme Court requires us to first determine "[i]f the intent of Congress is clear" and only then determine if the "the agency's answer is based on a permissible construction of the statute." *Chevron* 467 U.S. at 842-43. The majority ignores this counsel and proceeds straight to whether or not it agrees with the BIA's construction. The statutes here are ambiguous; we must recognize those ambiguities and analyze whether the agency's approach is reasonable in light of them, not substitute our own construction as if we were reviewing the statutes de novo.

However, even assuming for the moment that the majority's approach is correct, its logic is not. The majority argues that because ADAA § 7344(b) was not included in the text of the INA, the IMMAct could not have affected ADAA § 7344(b). Maj. Op. at 5004-06. I believe the majority to be in error on this point.

There are essentially two problems with the majority's theory. First, the majority is wrong because ADAA § 7344(b) no

longer applies to INA § 241(a). Section 7344(b) only modi-
fied the changes imposed by § 7344(a), *see* ADAA § 7344(b)
("The amendments made by subsection (a) shall apply to
. . ."), and § 7344(a) was overwritten by IMMAct § 602(a).
Indeed, after § 602(a) rewrote INA § 241(a), and thus made
§ 7344(a) inoperative, the BIA reasonably concluded—
correctly, in my view—that the retroactivity provision
imposed by ADAA § 7344(b) no longer applied. *See Lettman*,
22 I. & N. Dec. at 372.

Second, if the majority were correct, and ADAA § 7344(b)
was not included in any part of the INA, then § 7344(b) still
cannot be an exception to the broad retroactivity provision in
IMMAct § 602(c). Section 602(c) applies a general rule of
retroactivity, "[e]xcept as otherwise specifically provided in
such section [of the INA]."[1] If ADAA § 7344(b) was never
part of any provision of the INA, then I simply cannot under-
stand how the mandate of ADAA § 7344(b) was "specifically
provided in such section." In other words, once the majority
concludes that § 7344(b) is entirely excluded from the INA,
it cannot conveniently slip § 7344(b) back into the INA for
purposes of applying the "except" clause under IMMAct
§ 602(c).

In sum, the BIA reasonably concluded ADAA § 7344(b) no
longer applies because § 7344(b) only modifies § 7344(a) and
the amendments imposed by § 7344(a) were overwritten in
1990. Moreover, taking the majority's claim that § 7344(b)
was never part of the INA as true, § 7344(b) cannot serve as
a "section" of the INA that would bring it within the excep-
tion enumerated in IMMAct § 602(c). The BIA committed no
error here, and certainly no error that would allow us to ignore
*Chevron*.

---

[1]For purposes of this argument I assume that the majority agrees that
"such section" refers to the INA, even though it fails to express exactly
what "such section" must unambiguously mean.

2

Having concluded that *Chevron* does not apply because the BIA's "reasoning cannot be squared with the actual statute," Maj. Op. at 5006, the majority nonetheless proceeds to apply the first prong of *Chevron*. It concludes that "when the canon militating against implied repeal is fully and correctly applied, it becomes clear that there is no statutory ambiguity to resolve here, and thus no reason to defer to the agency." *Id.* at 5006-07.

I again object to the approach. The majority puts the cart before the horse: having concluded that the BIA's construction deserves no deference, asking whether the statute is ambiguous is simply a foregone conclusion. *Chevron* instructs us to first determine "[i]f the intent of Congress is clear" and then determine if the "the agency's answer is based on a permissible construction of the statute." 467 U.S. at 842-43. The majority has turned this analysis on its head.

Just as the majority incorrectly concluded that *Chevron* did not apply *in toto*, it erroneously applies *Chevron pro tanto*. It is simply untenable—and contrary to the views of the BIA, the Fourth and Eleventh Circuits, and, modestly, me—to claim that the relevant statutory provisions here have "only one apparent and unambiguous meaning." Maj. Op. at 5007. Indeed, even Ledezma consistently argues that the statutory provisions at issue here are *unequivocally* ambiguous. In Ledezma's own words, "Given the statute's language, it is apparent that there are different, possible interpretations of the 'exception clause' of section 602(c)"; moreover, "every judicial and administrative body to consider the matter has found that the 'exception clause' of section 602(c) is ambiguous." I fully agree with Ledezma that "[t]he judicial consensus is that the exception clause of section 602(c) is ambiguous."

In fact, Ledezma's entire argument on appeal is based on the fact that the retroactive application of the statute against

him *is ambiguous* and therefore a violation of the clear statement rule established in *St. Cyr v. INS*, 533 U.S. 289 (2001)—an argument that the majority must abandon because it is foreclosed by *Hovsepian*. Ignoring even Ledezma's pleas to find ambiguity, the majority concludes that a canon of statutory construction resolves any uncertainty. As outlined below, I cannot agree.

3

The majority makes at least two errors in its statutory interpretation analysis. First, even if this case involved an implied repeal—which, as explained below, I believe it does not—the BIA did not err in concluding that IMMAct repealed the retroactivity provision in ADAA § 7344(b) as applied to the changes implemented by ADAA § 7344(a). The presumption against implied repeals is just that: a *presumption*, not a rule. *See United States v. Novak*, 476 F.3d 1041, 1052 (9th Cir. 2007) (applying the "presumption against implied repeals" and finding that the presumption was rebutted by the language of the statute). The BIA has fully explained why any presumption is overcome: its "understanding [was] that the purpose of section 602 of the 1990 Act was to completely revise the deportation grounds." *Lettman*, 22 I. & N. Dec. at 372. The IMMAct, the BIA explained, was a "wholesale revision of [8 U.S.C. § 1251]," a "new statutory scheme," embracing "comprehensive changes." *Id.* at 374. Based on that premise, BIA's conclusion makes perfect sense:

> With this in mind, we find it difficult to believe that Congress intended to revise the deportation grounds, but still have the former Act ultimately determine deportability. In other words, it makes no sense to enact a whole new provision, yet keep the former version perpetually intact.

*Id.* at 372.

A 1991 House Committee report supports the BIA's interpretation, describing the statute in the following terms:

> The [IMMAct] substantially revised the immigration law of the United States. In fact, the Act constituted the most comprehensive re-write of immigration law in 66 years. Every major area of the law, with the one exception of refugee matters, was amended.

H. Rep. No. 102-383, at 2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1372, 1372. Indeed, even today's majority notes that "Congress overhauled deportation law by passing the IMMAct." Maj. Op. at 4998. The BIA can hardly be faulted for coming to the same conclusion.

A repeal through a wholesale revision of the section is not the sort of implied repeal that is discouraged by our presumption. A statutory repeal may be properly inferred "where the latter Act covers the whole subject of the earlier one and is clearly intended as a substitute." *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 663 (2007) (internal quotation marks omitted) (quoting *Branch v. Smith*, 538 U.S. 254, 273 (2003)).[4] The BIA's construction of § 602 is well within the general principles applicable to implied repeals.

---

[4]The majority's reliance on *National Association of Home Builders* is particularly ironic. In that case the Supreme Court reversed us for failing to defer to an agency's rational judgment. 551 U.S. 644, 667-70 (2007). In addition to finding that our decision in that case injected an implied repeal into the statute, *id.* at 662-64, the Court scolded us for "simply disregard[ing]" the agency's reasonable interpretation of its governing statute, *id.* at 668. The present case is the opposite side of the same coin. The majority here repaints an agency decision as an implied repeal in order to disregard the BIA's reasonable interpretation of its governing statute. The lesson to be gleaned from *National Association of Home Builders* is that "we defer to [an agency's] reasonable interpretation," not that we apply hyper-technical review to determine if the agency's decision could be viewed as an implied statutory repeal. *Id.* at 671.

The majority takes consolation in the fact that its decision today places only "a small puncture in a broad shield." Maj. Op. at 5010 (quotation marks and citation omitted). I disagree. The majority has turned a broad shield into a sieve. According to the majority's reasoning, any section, whether in the INA or not, can stand as an exception to the retroactivity rule laid out in IMMAct § 602(c). This appears to include retroactivity provisions for all twenty-one categories of crimes included in the definition of "aggravated felony," *see* 8 U.S.C. § 1101(a)(43), as well as "the approximately thirty grounds for deportation and fourteen categories of deportable criminal offenses that IMMAct § 602(a) listed." Maj. Op. at 5010. What was Congress's point in placing a catch-all retroactivity provision in the statute if every previous retroactivity provision, whether in the INA or not, is still preserved? The majority has not simply created a small exception to a general rule, but ignored the language of the statute and made an otherwise straightforward rule into a mess of competing retroactivity provisions that vary depending on the particular provision at issue.

Second, instead of applying a statutory canon and explaining why it resolves any ambiguity, the majority skips straight to analyzing whether or not Congress impliedly repealed ADAA § 7344(b). Maj. Op. at 5007. In addition to avoiding the problem of stating what the statute actually means,[3] this approach also allows the majority to avoid analyzing whether this case even involves an implied repeal: which, not surprisingly, it does not. IMMAct § 602(a) did not impliedly alter INA § 241(a)-it boldly erased it and rewrote it. By redrafting INA § 241(a) in IMMAct § 602(a), Congress severed § 241(a)

---

[3]Indeed, other than making multiple conclusory statements, Maj. Op. at 5006-07 ("[O]nce the presumption is applied the statute is not ambiguous."), ("[T]here is no statutory ambiguity to resolve here, and thus no reason to defer to the agency."), "[T]he statute is not susceptible to multiple readings."), ([The statute] admits of only one apparent and unambiguous meaning."), the majority does not provide a definitive construction.

from § 7344(b) and applied a new provision in IMMAct
§ 602(c). Indeed, Congress had no need to repeal ADAA
§ 7344(b) because § 7344(b), by its terms, only applied to
amendments made by § 7344(a), *not* to INA § 241(a) gener-
ally or to amendments made by IMMAct § 602(a).

The majority acts as if Congress has simply redesignated
the amendments made by ADAA § 7344(a) as a new section
of the INA. It did not: Congress chose to "amend" INA
§ 241(a) by rewriting its provisions. Congress knows the dif-
ference between redesignating a section and amending one.
*Compare* IMMAct § 602(a) ("amending" INA § 241(a) and
rewriting it completely) *with* IMMAct § 602(b)(2)(B)
("redesignating" former § 241(e) as § 241(b)). It chose not to
redesignate the relevant section here, and we should not act
as if it did.

My greatest concern is that the majority allows appellate
courts to make an end-run around *Chevron*. Under the major-
ity's rationale, agencies receive no deference if a panel can
point to some other statute that might conflict with the agen-
cy's interpretation. By the majority's lights, the agency must
ask us if we agree with its interpretation before attempting to
exercise its expertise. The Supreme Court has recently
reminded us that "[a]n agency's interpretation of the meaning
of its own regulations is entitled to deference unless plainly
erroneous or inconsistent with the regulation." *Nat'l Ass'n of
Home Builders*, 551 U.S. at 672. The majority has failed to
provide a cogent explanation as to why such deference does
not apply here.

To sum things up, the majority argues that because the BIA
was wrong (which it was not), we need not afford *Chevron*
deference (which we do). The majority then goes on to apply
step one of *Chevron* (which it said it wouldn't do), invokes
the presumption against implied repeals (which it applies as
a rule rather than a presumption), and disposes of the case by
purportedly applying the canon against implied repeals

5048          LEDEZMA-GALICIA v. HOLDER

(which it gets wrong). All of this leads the majority to the conclusion that the statutes are only capable of one meaning (which is at odds with Ledezma's argument, the BIA, and every other Circuit to look at the question). Because *Chevron* clearly applies to this case and the presumption against implied repeals neither applies nor forecloses the BIA's construction, I would defer to the BIA's reasonable interpretation of these ambiguous statutes.

4

Finally, the majority claims that interpreting § 602(c) to have impliedly repealed ADAA § 7344(b) will produce "exceedingly odd results" when read in conjunction with IMMAct § 501-a statute that none of the parties has raised in its arguments on appeal, that has no application to the present dispute, and that the BIA has not had an opportunity to interpret. Maj. Op. at 5012-13. I will address the issue briefly to respond to the majority's claims that § 501 controls the outcome of the present case.

IMMAct § 501(a) included a number of amendments that expanded the definition of "aggravated felony." IMMAct § 501(b) provided that two of these amendments "shall be effective as if included in the enactment of [ADAA § 7342]." The majority first argues that this reference necessarily indicates an intention to leave § 7344(b) in force; otherwise, the ADAA retroactivity provision would be the same as the IMMAct retroactivity provision. Maj. Op. at 5013-14. This argument is easily dispensed by simply pointing out that the majority's perceived oddity is actually the current status of the law. *See* IIRIRA § 321(b) (stating that the definition of aggravated felony "applies regardless of whether the conviction was entered before, on, or after the date of enactment of this paragraph").[4]

---

[4]The majority also appears to argue that § 7344(b) must continue to apply or Congress's reference to the ADAA in § 501(b) would be super-

The majority also claims that applying § 501(b) "as having incorporated the temporal limitations of the ADAA with regard only to *some* of the IMMAct's definitional amendments would produce exceedingly peculiar results." Maj. Op. at 5015. The majority proclaims that Congress could not have possibly intended to protect "some, but not all, aggravated felons who committed crimes before the aggravated felony ground of deportation was created." Maj. Op. at 5015. Why not? Under the majority's reading of the statute, some changes to the aggravated felony definition in the IMMAct apply to aliens convicted after 1988 while others would only apply to aliens convicted after 1990. The majority fails to recognize that under any construction of these statutory provisions, deportability will turn on a different time period for different aliens depending on their crime of conviction. These kinds of anomalies often result when Congress amends statutes in a piecemeal fashion. The solution is not to enforce our own policy judgment as to how the statute should operate, but to defer to the agency that is charged with interpreting ambiguities in its governing statutes.

Moreover, in attempting to cure the perceived oddities in the BIA's construction, the majority's interpretation of the statute produces equally odd results. The majority recognizes (as it must) that an alien convicted of a firearm offense prior to 1988 is deportable, *see Hovsepian v. United States*, 359 F.3d 1144, 1156-57 (9th Cir. 2004) (en banc); Maj. Op. at 5021 (recognizing that "[d]espite [the ADAA's] temporal limitation, we have twice held that IMMAct § 602(c) rendered aliens deportable based on their pre-ADAA convictions"), while an alien convicted of sexually molesting a minor at the

fluous. However, this is not the only possible construction giving meaning to this language. Section 501(b) could also be read to apply the retroactivity provision of § 7344(b) to only the two definitional changes outlined in IMMAct § 501(b). Interpreting § 501(b), however, is not an issue properly raised before us; I would save a definitive construction to a panel informed by a decision of the BIA, a full record on the issue, and argument by counsel.

same time is not. With all due respect, "[t]his division would
make no sense," Maj. Op. at 5016, and this absurdity is only
multiplied by the hodgepodge of retroactivity provisions that
will apply to IMMAct § 602(a) after the majority's re-
construction of IMMAct § 602(c).

IV

There is a final, compelling reason why the majority is in
error. The BIA's reading of the interaction between the
ADAA and the IMMAct explained above is not only consis-
tent with, but is virtually compelled by, our en banc decision
in *Hovsepian v. United States*, 359 F.3d 1144 (9th Cir. 2004).
In *Hovsepian*, we held that IMMAct § 602(c) evidenced clear
congressional intent to legislate retroactively and that the
IMMAct applies to pre-ADAA convictions. *See* 359 F.3d at
1156. *Hovsepian* involved a different removability ground—a
firearms conviction under 8 U.S.C. § 1227(a)(2)(C), rather
than an aggravated felony conviction under 8 U.S.C.
§ 1227(a)(2)(A)(iii)—but this distinction has no bearing on
the retroactive application of those grounds for removal, since
the applicability provisions of both removability grounds are
essentially identical. The applicability provision for the depor-
tation for weapons violation that *Hovsepian* held did not sur-
vive the IMMAct reads:

> APPLICABILITY. — The amendment made by sub-
> section (a) shall apply to any alien convicted, on or
> after the date of the enactment of this Act, of pos-
> sessing any firearm or destructive device referred to
> in such subsection.

ADAA § 7348(b). The applicability provision for aggravated
felony convictions that the majority argues survives the
IMMAct, reads:

> APPLICABILITY. — The amendments made by
> subsection (a) shall apply to any alien who has been

convicted, on or after the date of the enactment of
this Act, of an aggravated felony.

ADAA § 7344(b). Thus the interplay between the ADAA and
the IMMAct is the same for firearms offenses as it is for
aggravated felons.

I cannot see how we can possibly reconcile *Hovsepian* with
the majority's decision. The majority attempts to distinguish
the two provisions on the grounds that IMMAct § 602(a) sub-
stantively changed the firearms ground for deportability from
the version contained in the ADAA, whereas § 602(a) made
no change to the substance of the aggravated felony ground
for deportation. Maj. Op. at 5019. That change occurred in the
INA's definitional section. IMMAct § 501.

The majority is correct about this structural distinction, but
I cannot comprehend why this difference has any bearing on
the post-IMMAct survival of the retroactivity provisions of
the ADAA. The Eleventh Circuit considered and expressly
rejected precisely this attempt to distinguish the applicability
provisions for firearms offenses and aggravated felonies. In
*Lettman,* the court explained that it had already addressed the
effect of IMMAct § 602(c) on the former firearms ground for
deportation, and held that "the effective date restrictions
found in the old statute no longer apply." 207 F.3d at 1372
(quoting *Lopez-Amaro v. INS*, 25 F.3d 986, 988 (11th Cir.
1994), and citing, *inter alia*, *United States v. Yacoubian*, 24
F.3d 1 (9th Cir. 1994)). The court explained that the petition-
er's attempt to distinguish that case "by asserting that Con-
gress made 'substantive' changes to the firearm offense
ground, but 'merely redesignated' the aggravated felony
ground" failed. *Id.* It "[found] nothing to compel the BIA to
conclude that Congress intended those convicted of firearm
offenses to be treated differently than those convicted of
aggravated felonies." *Id.* The court reasoned that "[o]n the
contrary, giving the grounds parallel treatment is consistent

with Congress's intent to make the INA more rational and easier to understand." *Id.* (citation and brackets omitted).

The Eleventh Circuit's analysis is consistent with *Hovsepian* and entirely persuasive. Perhaps this distinction between the statutes might be relevant if the IMMAct amended the definition of aggravated felony in a way that encompassed Ledezma for the first time. But it was not the 1990 IMMAct that defined "aggravated felony" to include sexual abuse of a minor, but the 1996 IIRIRA, and IIRIRA could not have been clearer that its amendments applied "regardless of when the conviction occurred." IIRIRA § 321(c); *see also* IIRIRA § 321(b) (making changes to the definition of aggravated felony retroactive). Moreover, the retroactivity of the aggravated felony definition is well established in our precedent. *See, e.g.*, *United States v. Maria-Gonzalez*, 268 F.3d 664, 668-70 (9th Cir. 2001).

The only question is whether IMMAct makes the general aggravated felony deportability provision retroactive, and in doing so supersedes the ADAA applicability provision. The BIA looked carefully at that difficult question and concluded that it did. This is a reasonable conclusion worthy of deference.

\* \* \* \* \*

I would deny Ledezma's petition for review. I respectfully dissent.